**AFFIDAVIT OF SPECIAL AGENT BRIAN P. O'SULLIVAN IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Brian P. O'Sullivan, being duly sworn, declare and state as follows:

**Introduction and Agent Background**

1. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since February 2012. I am currently assigned to the FBI Boston Child Exploitation and Human Trafficking Task Force, where I investigate Violent Crimes Against Children ("VCAC"). While employed by the FBI, I have investigated federal criminal violations related to, among other things, the online sexual exploitation of children. As a Special Agent with the FBI, I have conducted numerous investigations into the coercion and enticement of minors, and the production, attempted production, distribution, and possession of child sexual abuse material, including executing federal search warrants and criminal complaints, including but not limited to violations of 18 U.S.C. §§ 1470, 2422, 2423, 2251, and 2252A. I have conducted and participated in several investigations of violations of those statutes. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

2. I am currently investigating Charles Eugene Schnitzlein III ("SCHNITZLEIN"), YOB 1986, for coercion and enticement of a minor, or attempt thereof, in violation of 18 U.S.C. § 2422(b) (hereinafter, the "Target Offense").

3. This affidavit is being submitted in support of an application for a warrant to search electronic equipment, specifically: a Samsung Galaxy model A42 5G, with IMEI number 359990821015905, (hereinafter, "the Equipment"), that is in the possession of law enforcement investigators, as described in Attachment A. There is probable cause to believe that the Equipment

contains evidence, fruits, and instrumentalities of the Target Offense, as described in Attachment B.

4. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses, including District of Massachusetts United States Probation Officer Lacey Francis. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### SCHNITZLEIN's Prior Offense

5. On April 9, 2021, SCHNITZLEIN was charged by Criminal Complaint in the District of Massachusetts with travel with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2423(b). *See United States v. Schnitzlein*, 21-CR-10241-IT. The Affidavit filed in support of the Complaint is attached as Exhibit 1 and incorporated by reference as if set forth in full herein (hereinafter, the "Complaint Affidavit"). The Complaint Affidavit outlined in detail how SCHNITZLEIN communicated with an FBI Online Covert Employee ("OCE") who was working undercover operating a profile on Kik and posing as a 13-year-old female.[1] SCHNITZLEIN reached out to the OCE on Kik and, after the OCE indicated that they were 13, SCHNITZLEIN requested a "dirty picture" where the OCE was "fully naked." Over the course of multiple weeks in March 2021, SCHNITZLEIN communicated with the OCE, and ultimately discussed meeting up in person so that SCHNITZLEIN could have sex with the OCE.

6. On April 9, 2021, SCHNITZLEIN travelled from his residence in Fall River,

---

[1] Kik is an instant messaging mobile application.

Massachusetts, to Nashua, New Hampshire to meet with the OCE for the purpose of having sex. SCHNITZLEIN stopped on the way to Nashua at a Walmart where he purchased condoms, among other things. SCHNITZLEIN was taken into custody in Nashua, New Hampshire. SCHNITZLEIN remained in custody from that date forward.[2]

7.  On August 9, 2021, an Information was filed charging SCHNITZLEIN with travel with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2423(b). On September 7, 2022, SCHNITZLEIN pleaded guilty and was sentenced to forty-eight months of imprisonment.

### SCHNITZLEIN's Supervised Release Violations

8.  On February 22, 2024, SCHNITZLEIN was released on supervised release to Coolidge House, which is a residential reentry center located in Boston, Massachusetts. The conditions of SCHNITZLEIN's supervised release required the following:

- Special Condition 6: You must allow the installation of computer internet monitoring software on approved internet capable devices but may still use a computer for work purposes that has been previously approved by the Probation Office. The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. You must not attempt to remove or otherwise defeat such systems, and must allow the Probation Office to examine such computer and receive data from it at any reasonable time.

- Special Condition 8: You must not possess or use any computer or internet-capable device without prior approval from the Probation Office. Any such device should not be used to knowingly access or view sexually explicit materials as defined in 18 U.S.C. § 2256(2)(A).

*See* Judgment (Docket Entry 34) in 21-CR-10241-IT.

9.  Pursuant to the conditions of SCHNITZLEIN's supervised release, Internet

---

[2] Child pornography was not found on SCHNITZLEIN's devices.

Probation and Parole Control ("IPPC") software was installed on the Equipment. SCHNITZLEIN identified his cellular phone (the Equipment) to IPPC in order to enroll in IPPC's monitoring program. SCHNITZLEIN enrolled in IPPC on April 16, 2024. The software monitors the device and takes screenshots every thirty seconds. The monitoring software flags various terms, images, web searches, etc. When the monitoring software flags something on the device that is suspicious, USPO will receive an email essentially advising USPO to check the device. USPO can then remotely access the device in real-time via the software, or can review the screenshots taken by the software that are logged and saved. In this case, when IPPC staff learned of the suspicious activity, a document was compiled of some of the screenshots from SCHNITZLEIN's device (the Equipment), which was then provided to USPO for review.

10. On June 10, 2024, after USPO reviewed the screenshots generated by IPPC, an arrest warrant was issued and SCHNITZLEIN was taken into custody for violating the terms of his supervised release, including committing a new federal, state, or local crime based on communications and images observed on SCHNITZLEIN's device (the Equipment) via the IPPC software.

11. The Equipment was taken into custody by Coolidge House earlier in June 2024. On June 14, 2024, the Equipment was provided to the FBI and was placed into evidence. The Equipment is being stored at the FBI's facilities, as described in Attachment A.

### IPPC Screenshots

12. USPO initially provided me with two documents, which I understood to be a small subset of the screenshots flagged as suspicious by IPPC on SCHNITZLEIN's device the Equipment. These documents included screenshots of communications recovered from the Equipment by the IPPC software.

13.     On July 31, 2024, USPO provided additional documentation including the entirety of the screenshots flagged as suspicious by IPPC on the Equipment. These screenshots were fragmented and included limited portions of what appeared to be longer communications.

14.     During my review of these documents, I observed screenshots of chats between SCHNITZLEIN and individuals who identified themselves as minor females on the chatting platform, Chat-Avenue.[3] For example, I observed screenshots between SCHNITZLEIN and a female with a screenname that included "girl" and indicated that the female user was in high school, by the initials "H.S." (hereinafter, "FM 1").[4] The following chats from June 5, 2024, between SCHNITZLEIN and FM 1 were observed:

>   SCHNITZLEIN: What city are you in
>
>   FM 1: hingham
>
>   SCHNITZLEIN: I'm available Saturday to meet
>
>   SCHNITZLEIN: If you want…
>
>   FM 1: yes i want to
>
>   FM 1: do you have a car?
>
>   SCHNITZLEIN: No, but i take public transportation[5]
>
>   * * *

---

[3] Chat-Avenue is a website (www.chat-avenue.com) that hosts chat rooms. The website offers multiple free chat rooms and an ability to chat with thousands of other people from all over the world in one of several communities. Chat-Avenue provides the ability to communicate via live text, audio, video and cam streaming functions.

[4] These screennames are known to me but redacted herein to protect the privacy of the suspected minors.

[5] IPPC flagged a screenshot of a Google Map search conducted by SCHNITZLEIN searching public transportation from his location to Hingham, Massachusetts.

5

SCHITZLEIN: Do you have sex a lot?

FM 1: not a lot do u?

SCHNITZLEIN: Not really

SCHNITZLEIN: Do you want in you?

FM 1: yes is that ok?

SCHNITZLEIN: Yes. Too bad I can't see you naked

\* \* \*

SCHNITZLEIN: What are you going to wear Saturday

FM 1: short skirt and white tank top my white keds and nothing else

SCHNITZLEIN: You should wear underwear, especially around others

FM 1: Yes

SCHNITZLEIN: What time should we meet

FM 1: 12?

SCHNITZLEIN: Are you walking there?

FM 1: Yes

\* \* \*

SCHNITZLEIN: Or I hurt u

FM 1: you will make me happy

FM 1: why would you hurt me?

SCHNITZLEIN: Like if its painful inside u

FM 1: I like when things hurt

\* \* \*

SCHNITZLEIN: Well I look forward to meeting you

FM 1: me to

SCHNITZLEIN: What will you tell your family

SCHNITZLEIN: When you leave

FM 1: im going to tye park

\* \* \*

FM 1: im sorry

SCHNITZLEIN: So I hope you aren't a police officer

SCHNITZLEIN: I don't wanna go back to prison

This chat also included a photograph of a naked minor estimated to be roughly between 13 and 18 years old based on breast and body development, with her breasts exposed covering her genitals with her hand. The female's face is not visible in the photograph.

15. The communication between SCHNITZLEIN and FM 1 appeared to continue and the following exchange took place on June 6, 2024:

SCHNITZLEIN: But I would not bring you here

SCHNITZLEIN: I would u to a restaurant

SCHNITZLEIN: Maybe target or a movie

FM 1: how can we do sex

SCNITZLEIN: Target bathroom or movie theater

\* \* \*

SCHNITZLEIN: Prudential Center

FM 1: I know where that is

SCHNITZLEIN: Cool

SCHNITZLEIN: It's walking distance for me

* * *

SCHNITZLEIN: I will if you want

FM 1: i want

SCHNITZLEIN: Will you finger yourself in front of me

FM 1: yes i will for you

FM 1: I don't have hairs yet

* * *

SCHNITZLEIN: Do you want me to eat u?

FM 1: yes do u like that?

SCHNITZLEIN: Yes

16. I also observed screenshots of a communication between SCHNITZLEIN and a female whose profile on Chat-Avenue identified the female as a 14-year-old ("FM 2"). The corresponding profile picture for FM 2 appeared to depict a female's face that is consistent with that age, based on my training and experience. The following chats from May 31, 2024, between SCHNITZLEIN and FM 2 were observed:

SCHNITZLEIN: I wish I could see you in a bathing suit or cheer outfit

FM 2: [Smiling Emoji]

SCHNITZLEIN: I am sorry

* * *

SCHNITZLEIN: I've tried to post a picture, but unable to

FM 2: no problem [smiling Emoji]

SCHNITZLEIN: Have you ever kissed a guy

FM 2: yes often already

8

>SCHNITZLEIN: I wish it was me
>
>FM 2: [Smiling Emoji]
>
>SCHNITZLEIN: Have you done anything with a guy
>
>FM 2: yes a lot already

17. In another chat, I observed screenshots of communications between SCHNITZLEIN and a female with a screenname ending in "14" ("FM 3"). The following chats from May 31, 2024, between SCHNITZLEIN and FM 3 were observed:

>SCHNITZLEIN: I am Charlie, where are you from
>
>FM 3: Michigan
>
>SCHNITZLEIN: Massachusetts for me
>
>SCHNITZLEIN: 8th or 9th grade?
>
>\* \* \*
>
>SCHNITZLEIN: I think you are model material
>
>FM 3: Thx lol
>
>SCHNITZLEIN: And I wish I was 14 to ask you out
>
>FM 3: lol
>
>FM 3: Thnx

18. In another chat, I observed the following messages between SCHNITZLEIN and an individual who identified herself as a nine-year-old minor female ("FM 4") on June 6, 2024:

>SCHNITZLEIN: Sexual chat or non
>
>FM 4: Im only 9yo have no idea about sec chat
>
>SCHNITZLEIN: Do you want to learn
>
>FM 4: ehm how

9

>FM 4: Im by myself uncle William and grandpa in the kitchen
>
>SCHNITZLEIN: Put your hand down your pants
>
>FM 4: ehm what do u mean with
>
>SCHNITZLEIN: And start rubbing your private area

19. In another chat with a female with a screenname that included "13," SCHNITZLEIN asked for a "full body picture." The female sent back a naked photograph of a female, that I believe to be approximately 12 to 15 years of age, based on my training and experience, as well as the size, facial features, and body development of the female in the image.[6] The female is sitting on a rock with a purple flotation device covered in yellow stars set behind her. There are pink sandals by her side. The female's bare breasts are exposed. Her genitals are not exposed.

### Probable Cause to Believe that the Equipment Contains Evidence, Fruits, and Instrumentalities

20. As outlined above, there is probable cause to believe that SCHNITZLEIN committed or attempted to commit the Target Offense. Accordingly, there is probable cause to believe that evidence, fruits, and instrumentalities of the Target Offense will be found on the Equipment. Specifically, SCHNITZLEIN was released on supervised release in February 2024, after serving a sentence for travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). As outlined briefly above and in more detail in Exhibit 1, in that case SCHNITZLEIN was communicating with an OCE who was presenting as a 13-year-old female. Not only did SCHNITZLEIN request naked images from the OCE, he also made plans to meet the OCE to have sex with the OCE, and then did, in fact, travel to Nashua, New Hampshire for this

---

[6] Based on my training and experience, I do not believe that either of the two images discussed herein meet the definition for child pornography.

10

purpose.  Shortly after serving his sentence on that case, SCHNITZLEIN used the Equipment to communicate with suspected minors, requested photographs from the minors, and made plans to meet at least one suspected minor for the purpose of having sex.  Taken together, these facts support that there is probable cause to believe that evidence of the Target Offense on the Equipment.

21.     As discussed above, the Equipment is currently being stored by the FBI at their facilities as described in Attachment A.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this type of equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

22.     From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use Smartphones, such as the Equipment, to carry out, communicate about, and store records regarding their daily activities.  These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet-based messages; scheduling activities; purchasing items; searching for information on the internet; and creating and storing images and videos of their movements and activities.  That is particularly true here, where, based upon the documents provided by USPO, we know that SCHNITZLEIN was using the Equipment to communicate with suspected minors and request images from suspected children, among other things.

23.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphone can now function essentially as small computers.  Samsung devices, such as the Equipment in this case, are a type of smartphone.

Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

24. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B on mobile phones.

25. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

   a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic Equipment, they can easily transfer the data from their old device to a new one.

   b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file

        system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

   d.   Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

## CONCLUSION

26. Based on the information described above, I have probable cause to believe that SCHNITZLEIN has violated the Target Offense and that evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, are contained within the Equipment described in Attachment A.

Sworn to under the pains and penalties of perjury,

                                     _____
                                     Brian P. O'Sullivan
                                     Special Agent
                                     Federal Bureau of Investigation

Sworn via telephone in accordance with Fed R. Crim. P. 4.1 on August 23, 2024.

_____
DONALD L. CABELL
Chief United States Magistrate Judge

13

## ATTACHMENT A

### Description of Equipment to Be Searched

The Equipment to be searched consists of the following:

Black Samsung Galaxy A42 5G, bearing IMEI number 359990821015905 (the Equipment).

The Equipment is located at FBI Boston Division Headquarters Evidence Control Unit, located at 201 Maple Street, Chelsea, Massachusetts.

## ATTACHMENT B

### Items to Be Seized

I. All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 18 U.S.C. § 2422(b) (coercion and enticement of a minor, or attempt thereof), from April 1, 2024 to Present:

    A. Records pertaining to the following topics:

        1. The persuasion, inducement, enticement, or coercion of any minor to engage in sexual activity;

        2. Communications with minors about sexual activity;

        3. Internet activity, communications, images, and videos reflecting a sexual interest in minors;

        4. Information concerning sexual activity with other minors, or of sexual interest in minors, or that may be helpful in identifying any such minor;

        5. Address books (virtual and physical), names, and lists of names and addresses of individuals who may have been contacted by use of the computer or by other means for the purpose of committing violations of 18 U.S.C. § 2422(b);

        6. Travel for the purpose of engaging in illicit sexual conduct with minors;

        7. The identity of any child with whom SCHNITZLEIN communicated directly, or through another individual;

        8. The identity of any person who sent or received communication(s) relating to minors located in the Equipment;

        9. Any social media account(s) or communication application(s) used to

send or receive any communication(s) relating to sexual activity or interest in minors located on the Equipment; and

10. The identity, location, and travel of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the crimes listed above.

B. Evidence of who used, owned, or controlled the Equipment;

C. Evidence of malicious computer software that would allow others to control the Equipment, software, or storage media, evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software;

D. Evidence of the attachment of other hardware or storage media;

E. Evidence of counter-forensic programs and associated data that are designed to eliminate data;

F. Evidence of the times the Equipment was used;

G. Passwords, encryption keys, and other access devices that may be necessary to access the Equipment;

H. Records relating to accounts held with companies providing Internet access or remote storage of either data or storage media; and

I. Records relating to the ownership, occupancy, or use of the location from which the Equipment was obtained by law enforcement investigators.

II.   Serial numbers and any electronic identifiers that serve to identify the computer Equipment.

**DEFINITIONS**

For the purpose of this warrant:

    A. "Equipment" means any hardware, software, storage media, and data.

    B. "Hardware" means any electronic device capable of data processing (such as a computer, digital camera, cellular telephone or smartphone, wireless communication device, or GPS navigation device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

    C. "Software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

    D. "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, USB or thumb drive, or memory card).

    E. "Data" means all information stored on storage media of any form in any storage format and for any purpose.

    F. "A record" is any communication, representation, information, or data. A "record" may be comprised of letters, numbers, pictures, sounds or symbols.